CITY OF MINOT, North Dakota, Plaintiff and Appellee,

v.

William C. RUBBELKE, Defendant and Appellant.

Cr. No. 890294.

Supreme Court of North Dakota.

June 1, 1990.

Schoppert Law Firm, Minot, for defendant and appellant; argued by Thomas K. Schoppert.

Mark Ashley Flagstad, City Prosecutor, Minot, for plaintiff and appellee.

GIERKE, Justice.

William Rubbelke appeals from a county court order which denied his motion for a new trial. We affirm.

On July 19, 1989, Rubbelke was found guilty by a six-person jury of driving under the influence of intoxicating liquor. Rubbelke promptly filed a motion for a new trial arguing that the trial court's reasonable doubt jury instruction was improper and prejudicial, thereby providing adequate grounds for a new trial. The reasonable doubt instruction, drafted by the trial judge, stated as follows:

"REASONABLE DOUBT

"The City must prove the essential elements of the offense charged beyond a reasonable doubt.

"While this means that the City cannot meet its burden of proof by establishing only that it is *more likely than not* that

an offense has been committed and that the Defendant committed that offense, neither does the City have to prove the essential elements of the offense charged to an *absolute certainty*. Rather, proof beyond a reasonable doubt requires that the City produce evidence which generates a *high degree* of probability or persuasive force, possibly falling short of absolute certainty, but sufficient to justify a verdict of guilty.

"While you cannot convict the Defendant on the basis that it is more likely than not that he committed the offense charged, nor can a conviction be based on mere speculation or guesswork on your part, neither should you go outside the evidence to imagine doubts to justify a not guilty verdict. A reasonable doubt is not a mere possible or imaginary doubt, but, rather, it is a doubt based on reason arising from a thorough and impartial consideration of all of the evidence in this case." [Emphasis original.]

Rubbelke argued that although he requested, prior to the giving of both the preliminary and final instructions, that the Court give the North Dakota pattern jury instruction on reasonable doubt[1] to the jury, the Court refused to do so and drafted and gave the jury an instruction that "is not the law in North Dakota." Rubbelke likened the Court's instruction to a formula which came close to an instruction based on mathematical chance. Such a formulation, Rubbelke maintained, has never been approved and was a significant departure from established case law.

The City of Minot argued that the jury instruction complained of was not prejudicial to Rubbelke. The City contended that case law held that North Dakota Pattern Jury Instructions were suggested instructions only and that a trial court was not required to submit instructions in the

---

1. The North Dakota Pattern Jury Instruction on Reasonable Doubt, No. 2002, provides as follows:

"The phrase 'reasonable doubt' means what the words imply. It is a doubt based on reason arising from a thorough and impartial consideration of all of the evidence in the case. It is that state of mind in which you do not feel an abiding conviction amounting to a moral certainty of the truth of the charge. While you cannot convict the Defendant on mere surmise or conjecture, neither should you go outside the evidence to imagine doubts to justify acquittal. If, after careful deliberation, you are convinced to a moral certainty that the Defendant is guilty of the crime charged, then you are satisfied beyond a reasonable doubt."

specific language requested by the defendant.

The County Court denied Rubbelke's motion stating that the:

"[I]nstruction fairly informed the jury in this case as to the law to be applied; that the instruction, when considered as a whole, and in light of all of the other instructions given in this case, was not erroneous; and, that the instruction was not in any way prejudicial to the defendant."

This appeal followed.

On appeal, Rubbelke advances several reasons why the trial court's jury instruction on reasonable doubt was erroneous. Initially, Rubbelke argues that the language "high degree of probability or persuasive force" used by the trial court in its jury instruction alludes to a mathematical formula. Secondly, Rubbelke contends that the following language from the North Dakota pattern jury instruction on reasonable doubt, which was excluded from the court's instruction, is essential to a reasonable doubt jury instruction: "It is that state of mind in which you do not feel an abiding conviction amounting to a moral certainty of the truth of the charge." Rubbelke maintains that the trial court erred in attempting to define "reasonable doubt" in terms of moral certainty without mentioning the term moral certainty by name. Rather, the "high degree of probability or persuasive force" language used by the trial court came from an edited definition of "moral certainty" from Black's Law Dictionary. This, Rubbelke argues, was in error.

■ It is well settled that jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Saul,* 434 N.W.2d 572, 576 (N.D.1989); *State v. Skjonsby,* 319 N.W.2d 764, 774 (N.D.1982). Jury instructions must be considered as a whole, and if when so considered they correctly advise the jury as to the law, they are sufficient, even though part of the instructions standing alone, may be insufficient or erroneous. *Saul, supra* at 576; *State v. White,* 390 N.W.2d 43, 44 (N.D. 1986); *State v. Bonner,* 361 N.W.2d 605, 609 (N.D.1985); *State v. Halvorson,* 346 N.W.2d 704, 709 (N.D.1984); *Skjonsby, supra* at 774. Selecting only a part of the instructions without considering the jury instructions as a whole is not proper because it can result in erroneous and misleading inferences. *State v. Kroeplin,* 266 N.W.2d 537, 544 (N.D.1978).

■ The main thrust of Rubbelke's argument is that the trial court refused to give the pattern jury instruction on reasonable doubt to the jury. Rubbelke argues that the "abiding conviction" language in the pattern jury instruction on reasonable doubt confers a message upon the jury that its decision concerning guilt or innocence must be an abiding decision meaning that its decision must be lasting, enduring and unchangeable.[2] Since the trial court omitted the "abiding conviction" language from its instruction, Rubbelke argues that the jury may have reached its verdict without recognizing its decision needed to be lasting, enduring and unchangeable. Nevertheless, we have held that our pattern jury instructions are suggested instructions only and are not mandatory. *State v. Voeller,* 356 N.W.2d 115, 121 (N.D.1984); *Skjonsby, supra* at 775; *State v. Dachtler,* 318 N.W.2d 769, 774 (N.D.1982). A trial court is not required to submit instructions in the specific language requested by the defendant. *Skjonsby, supra* at 775.

Thus, this Court must consider if the trial court's instructions, as a whole, correctly and adequately advised the jury of the law. If we determine that the challenged jury instruction, when read as a whole, is erroneous, relates to a subject central to the case, and affects the substantial rights of the accused, we will have found adequate grounds for reversal. *White, supra* at 45; *Bonner, supra* at 609.

2. Common synonyms of the term "abiding" are: "Eternal, enduring, everlasting, steadfast, permanent, immutable, durable, stable, continuing, immortal, unending, lasting, constant, indestructible, unchangeable, changeless, inherent, indissoluble." J.I. Rodale, *The Synonym Finder,* (1965).

Our current pattern jury instruction on reasonable doubt evolved from the case *Territory v. Bannigan,* 1 Dak. 451, 46 N.W. 597 (1877). In *Bannigan,* the trial judge gave the jury the following instruction on reasonable doubt:

"The prosecution has the laboring oar, or the affirmative of the issues, and must satisfy you not only by a preponderance of testimony, but beyond a reasonable doubt, of defendant's guilt. By 'doubt' I do not mean that you must be satisfied beyond the possibility of a doubt, but in determining this question of doubt you will act as a prudent, careful business man would act in determining an important matter pertaining to his own affairs."

On appeal the Supreme Court of Dakota rejected the trial judge's jury instruction concluding that:

"The judgement of a reasonable man in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of a criminal case involving life or liberty, something further is required. There must be in the minds of the jury an abiding conviction to a moral certainty of the truth of the charge, derived from a comparison and consideration of the evidence. They must be entirely satisfied of the guilt of the accused."

*Territory v. Bannigan, supra,* 46 N.W. at 600 (citation omitted). Thus, the court held that before a juror may condemn an accused, the juror must be able to say that he or she "feels an abiding conviction to a moral certainty of the truth of the charge." *Id.*

Thereafter, trial courts grappled with the concept of what "reasonable doubt" meant. Consequently, trial courts developed various definitions for the term "reasonable doubt." In *State v. Montgomery,* 9 N.D. 405, 83 N.W. 873 (1900), this court held that:

"The term 'reasonable doubt' is almost incapable of any definition which will add much to what the words themselves imply. In fact, it is easier to state what it is not than what it is, and it may be doubted whether any attempt to define it will not be more likely to confuse than to enlighten a jury. A man is the best judge of his own feelings, and he knows for himself whether he doubts better than any one else can tell him. Where any explanation of what is meant by a reasonable doubt is required, it is safer to adopt some definition which has already received the general approval of the authorities, especially those in our own state."

*Montgomery, supra,* 83 N.W. at 875 (citing *State v. Sauer,* 38 Minn. 438, 38 N.W. 355, 356 (1888)). Thus, this court concluded in *Montgomery* that "the practical lesson to be learned from these cases is that attempts to define a reasonable doubt seldom, if ever, do any good, and that the attempt is always fraught with the danger of committing prejudicial error." *Id. See also State v. Liberman,* 59 N.D. 252, 229 N.W. 363 (1930) (The term "reasonable doubt" needs no definition, it means what it says. Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury).

■ The instruction given by the trial court was partially based upon the Black's Law Dictionary definition of "moral certainty". In its memorandum opinion, the court stated that it believed the instruction given to the jury provided the jurors with a more workable and understandable definition of the term "reasonable doubt." After our review of the instruction as a whole, we do not find that the level of proof that the State needed to provide to prove evidence of guilt "beyond a reasonable doubt", within the meaning of the trial court's jury instruction, was altered to such an extent so as to prejudice Rubbelke. While the instruction was worded differently than the pattern jury instruction and did not emphasize the enduring quality of decision-making that rests upon an absence of reasonable doubt, the instruction compen-

sated for that deficit by its requirement that the city produce proof to justify a guilty verdict that is so strong and abundant that it only "possibly" falls short of "absolute certainty." The deficit which the defendant complains of was generously offset by the language describing the quantity and quality of the city's proof. We conclude that the instruction was not prejudicial to Rubbelke.

■ However, our conclusion that Rubbelke was not prejudiced is not synonymous with our stamp of approval of the trial court's jury instruction. We strongly recommend adherence to the pattern jury instruction on "reasonable doubt" for a number of reasons. Initially, the pattern instruction serves as a model, that has withstood the test of time, for attorneys and judges on which to base their respective arguments and decisions. Further, adherence to the pattern instruction will eliminate attorneys' and judges' variations from the pattern instruction and thereby obviate the uncertainty created by an ad hoc, case by case, determination of an appropriate instruction. Finally, adherence to the pattern jury instruction on "reasonable doubt" will, in theory, bring some level of conformity to criminal jury verdicts based on the evidence presented in each particular case. In sum, trial courts should resort to the pattern jury instruction definition of "reasonable doubt", which has the approval of the authorities, so as to avoid the dangers incident to any untested and untried definition.

We affirm the county court's denial of Rubbelke's motion for a new trial.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.