**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Barbara Jean ANDERSON, Defendant and Appellant.**

**Cr. No. 910098.**

Supreme Court of North Dakota.

Feb. 4, 1992.

Constance Louise Cleveland, Asst. States Atty., Fargo, for plaintiff and appellee.

Leslie Johnson–Soetebier, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Barbara Jean Anderson appealed from a jury conviction of aggravated assault. We reverse and remand for a new trial.

In late November 1989, Anderson admitted her ten-month-old son, Douglas, to a Fargo hospital with burns on his four limbs. Anderson said that Douglas had accidentally fallen into a tub of scalding water. Because the medical personnel did not believe the pattern of the burns was consistent with Anderson's explanation of how Douglas was injured, they reported the incident to Cass County Social Services as a possible case of child abuse. Anderson was subsequently charged with aggravated assault. At the trial, Doug-

las's treating physicians testified they did not believe that Douglas accidentally fell into the tub. Rather, they said they believed he had been placed face down into the water.

On appeal, Anderson contends that the trial court erred when it excluded photos she offered as evidence and when it denied one of her requested instructions, and that the evidence was insufficient to convict Anderson of aggravated assault.

Anderson twice attempted to offer five photos of a fully-healed Douglas. They were first offered at the close of Anderson's testimony. In response to the State's objection to the relevancy of the photos, Anderson's counsel argued that the defense's expert medical witness requested the photos, and that they would counter the "prejudicial" effect of the State's exhibits showing Douglas's injuries by showing that Douglas did not look "like a human vegetable" and had healed well. The trial court sustained the State's objection. Later, Anderson's expert witness, Dr. Solem, testified that he could infer the degree of the burn from the extent of or lack of discoloration and scarring in the healed skin. Dr. Solem said that there could be significant differences in the severity of second degree burns such as those suffered by Douglas, and that he could not tell whether Douglas's burns were superficial or deep burns using the State's photos. When Anderson offered the photos during Solem's testimony, the trial court again sustained the State's objection as to the relevancy of the evidence.

■ Rule 402, N.D.R.Ev., provides that "[a]ll relevant evidence is admissible," and that any "[e]vidence which is not relevant is not admissible." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. Thus the test as to whether evidence is relevant or irrelevant is whether it would reasonably and actually tend to prove or disprove any matter of fact in issue. *E.g. State v. Haugen,* 448

N.W.2d 191 (N.D.1989). The initial determination of the relevancy of the evidence lies within the sound discretion of the trial court. *Id.* On appeal, we will not overturn a trial court's decision regarding the admission or exclusion of evidence on the ground of relevancy unless the trial court abused its discretion. *Id.; State v. Olson,* 290 N.W.2d 664 (N.D.1980).

■ In this case we believe that the trial court abused its discretion in excluding the photographs offered by Anderson. The aggravated assault charge against Anderson alleged that she willfully caused serious bodily injury to Douglas. Section 12.1–01–04(27), NDCC defines "[s]erious bodily injury" to mean "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent loss or impairment of the function of any bodily member or organ." The state argued, before the trial court and on appeal, that the condition of Douglas at a later date was not a fact in issue. The State presented evidence that Douglas suffered extreme pain as a result of his burns. But the State also offered photos of Douglas's burns as part of that evidence. The effect was to make Douglas's later condition relevant because the photos showed the extent of, and the disfigurement resulting from, his burns, and the statutory definition of serious bodily injury includes serious permanent disfigurement. While the State did not argue disfigurement to the jury, evidence was offered from which the jury could infer that Douglas suffered disfigurement and that the State, therefore, proved that element of the crime of aggravated assault. Because Anderson was prevented by the trial court from offering evidence to rebut an element of the crime for which she was charged, we reverse the conviction.

■ Anderson contends that the trial court erred when it refused to give her requested instruction on accident and misfortune because that refusal denied her an instruction on the law supporting her theory of the case. While a defendant is entitled to a particular instruction on a valid

applicable theory of a case, provided there is some evidence to support the theory, *State v. Thiel,* 411 N.W.2d 66 (N.D.1987), a court is not required to submit instructions in the specific language requested by the defendant, *City of Minot v. Rubbelke,* 456 N.W.2d 511 (N.D.1990). Jury instructions must be considered as a whole. *Id.* "[J]ury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury." *State v. Saul,* 434 N.W.2d 572, 576 (N.D.1989). A trial court can refuse to give an inapplicable or irrelevant instruction. *State v. Marinucci,* 321 N.W.2d 462 (N.D.1982). A court must refuse a requested instruction that misstates the applicable law.

■ Anderson was charged with Aggravated Assault, a crime which must be committed "willfully." NDCC § 12.1–17–02(1). A person acts " 'Willfully' if [s]he engages in the conduct intentionally, knowingly, or recklessly." NDCC § 12.1–02–02(1)(e). Negligent conduct does not constitute willful conduct. *Compare* NDCC § 12.1–02–02(1)(d) *with* NDCC § 12.1–02–02(1)(a) to (c), (e).

■ The instruction requested by Anderson provided: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show neither criminal intent or purpose, *nor criminal negligence,* she does not thereby commit a crime." (Emphasis added). The origin of Anderson's requested instruction is California Jury Instruction–Criminal [CALJIC] 4.45. The use-note for this California instruction indicates that an instruction defining "criminal negligence" must be given when CALJIC 4.45 is used. *See* CALJIC 3.36 [defining criminal or gross negligence]. CALJIC 4.45 is an appropriate instruction for crimes with a culpability element including criminal negligence; North Dakota's ag-

gravated assault statute does not include this element. The requested instruction, therefore, injected an element of California Criminal law not part of the crime for which Anderson was charged. Whether the instruction would aid or impede Anderson's defense, it misstated the applicable North Dakota law and the trial court properly refused the instruction.

■ Anderson contends that the instructions given by the trial court did not allow her to argue her theory of the case, i.e., that Douglas was burned by accident. While the words "misfortune" or "accident" did not appear in the court's instructions, those instructions did define "willfully," "intentionally," "knowingly," and "recklessly." *See* NDCC § 12.1–02–02. In order to convict Anderson, the jury was required by these instructions to find that Anderson had acted consciously and with a clearly unjustifiable disregard for the risk of harm to Douglas. By definition, the element of "conscious disregard" excludes negligence. The instructions, therefore, did not interfere with Anderson's defense and Anderson's lawyer did, in fact, argue that the burns were accidental. We are not persuaded that Anderson's ability to present her defense was limited by the trial court. Taken as a whole, the instructions correctly and adequately stated the applicable law. Because we reverse Anderson's conviction and remand for a new trial, we note that at that trial an instruction which addresses Anderson's accident theory without including criminal negligence, or otherwise misstating North Dakota law, would be proper.

■ Lastly, Anderson contends that the circumstantial evidence in this case is insufficient to prove that she caused Douglas's burns or that her conduct was willful, and that, therefore, the evidence does not support the jury's verdict of guilty.[1] A verdict based upon circumstantial evidence

---

1. We review Anderson's sufficiency-of-the-evidence argument notwithstanding we have ordered a new trial. When the State fails to offer sufficient evidence to sustain a conviction, double jeopardy precludes a retrial. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), *see also City of Bismarck v. Schoppert,*

469 N.W.2d 808 (N.D.1991); *State v. Schwalk,* 430 N.W.2d 317 (N.D.1988); *State v. McMorrow,* 286 N.W.2d 284 (N.D.1979). Reversal for a procedural trial error, however, does not bar further prosecution of the defendant. *E.g. Schwalk,* 430 N.W.2d at 325 n. 2.

carries the same presumption of correctness as other verdicts and will not be disturbed on appeal unless it is unwarranted. *State v. Lovejoy*, 464 N.W.2d 386 (N.D. 1990). A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Carson*, 453 N.W.2d 485 (N.D.1990). In an appeal challenging the sufficiency of the evidence, the role of this Court is merely to review the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *Id.*

██ Anderson was alone with Douglas when he was injured. She filled the bathtub with water which came out of the tap at a maximum of 150 degrees Fahrenheit, and which she admitted stirring with a brush because the water was very hot. Douglas's treating physicians and the State's expert believed that the burn pattern was consistent with Douglas being placed into the water. They also said the burns were inconsistent with Douglas tumbling into the tub. From this evidence, the jury could infer that Anderson placed Douglas into the water and that she knew the water was hot enough to burn Douglas. We conclude that there was sufficient evidence for the jury to find Anderson guilty of aggravated assault.

We reverse the conviction and remand for a new trial on the charge of aggravated assault.

ERICKSTAD, C.J., and LEVINE, J., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

MESCHKE, Justice, concurring.

I concur in reversing and remanding for a new trial because Anderson was not allowed to use relevant evidence bearing on an element of the charge. I agree that there was sufficient evidence for the jury to consider so that Anderson was not entitled to a judgment of acquittal. In my view, however, an instruction that addresses Anderson's defense of accident would not only be proper at the new trial; it would be imperative.

Of course, negligence is not willful conduct. "A person who omits to perform an act does not commit an offense unless he has a legal duty to perform the act." NDCC 12.1–02–01(2). But, it is not so clear to me, as it appears to be to Justice Vande-Walle, that "[b]y definition, the element of 'conscious disregard' excludes negligence," in ordinary understanding. Certainly, these instructions did not say so.

This jury was properly instructed about the definitions of "willfully," "intentionally" "knowingly," and "recklessly." These instructions say:

> The word "recklessly" means that the Defendant engaged in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct.

In her defense, the accused testified that her baby crawled to, and fell into, a bathtub of hot water where she had just begun washing dirty diapers, when she left him untended momentarily to get a clean diaper for him. Unless told otherwise, I believe that a jury could very well believe that merely negligent conduct is "a gross deviation from acceptable standards of conduct."

Justice VandeWalle says that the defendant's requested instruction was faulty because its reference to "criminal negligence" injects an element inconsistent with North Dakota law. I disagree. In legal parlance, "criminal negligence" often means any willful act with a reckless culpability element, like this one. *See* Black's Law Dictionary 373 (6th ed. 1990). While terminologies differ under particular statutes, or between jurisdictions, "criminal or culpable negligence is generally defined, frequently with qualifying adjectives such as 'wanton' or 'flagrant', in terms of disregard of consequences or indifference to

the rights or safety of others." 21 Am. Jur.2d *Criminal Law* § 132 (1981). But, "the bare neglect of a legal duty is not a crime unless some statute so prescribes". *Id.*

This distinction was well put in *United States v. Pardee,* 368 F.2d 368, 374 (4th Cir.1966), which approved the following language in a prosecution for involuntary manslaughter:

> [T]he law is reasonably clear that a charge of manslaughter by negligence is not made out by proof of ordinary simple negligence that would constitute civil liability. In other words, the amount or degree or character of the negligence to be proven in a criminal case is *gross* negligence, to be determined on the consideration of all the facts of the particular case, and the existence of such gross negligence must be shown beyond a reasonable doubt. If the resultant deaths were merely accidental or the result of a misadventure or due to simple negligence, or an honest error of judgment in performing a lawful act, the existence of gross negligence should not be found.

While the lexicon of our North Dakota statutes differs, using recklessness instead of gross negligence, the concepts coincide. The distinction of recklessness from negligence and accident is the same—and more vital because our statutory phrasing blurs the difference between culpability and innocence.

Generally, a person is not criminally responsible for negligent or unintended results of his conduct, not in itself unlawful, even without an express declaration that there is no criminal responsibility for an act committed through misfortune or by accident. 21 Am.Jur.2d *Criminal Law* § 131. This is implicitly recognized in our criminal code by the declaration that "A person who omits to perform an act does not commit an offense unless he has a legal duty to perform the act." NDCC 12.1–02–01(2). I believe that an instruction, that an omission by accident or by negligence is not recklessness, should be given to the jury on

remand, if requested, because it is a correct statement of North Dakota law.